1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   Julio Campos and Miriam Campos,            No. 2:24-cv-01317-KJM-DB

12                      Plaintiffs,              ORDER

13          v.

14   Dyck O'Neal, Inc., et al.,

15                      Defendants.

16

17          Plaintiffs Julio Campos and Miriam Campos apply ex parte for a temporary restraining

18   order barring a foreclosure sale of real property in Turlock, California.  For the reasons in this

19   order, the ex parte application is **granted, and a hearing on a motion for a preliminary**

20   **injunction is set for 2:30 p.m. May 23, 2024**.

21   **I.     BACKGROUND**

22          According to a declaration filed alongside the pending ex parte application, plaintiff Julio

23   Campos owns the real property at 2495 Paseo Del Sol, Turlock, CA 95382.  Campos Decl. ¶ 3,

24   ECF No. 4-2.  He has owned that property since 2006, and it has been his family's primary

25   residence.  *Id.* ¶ 4.  He and his wife financed the purchase with two loans: one for 80 percent of

26   the purchase price, and one for the remaining 20 percent.  *Id.* ¶ 5.  This action concerns the

27   second loan.  Plaintiffs made payments on that loan until 2009, then filed a Chapter 7 bankruptcy

28   /////

                                          1

petition in 2012.  *Id.* ¶¶ 6–7.  The second loan was a scheduled debt.  *See id.* ¶ 7.  The bankruptcy proceedings closed later the same year, and for the next eleven years, plaintiffs received no account statements, no letters, no calls and no communications of any kind.  *Id.* ¶¶ 8–9.  They thought they owed nothing more.  *See id.* ¶ 9.

In 2023, however, Mr. and Ms. Campos received a notice of default stating they owed nearly $200,000 and warning that if they did not repay in full, the property would be sold in a foreclosure sale.  *Id.* ¶ 10.  They also learned defendant Dyck O'Neal, Inc., had become the loan's servicer.  *Id.* ¶ 11.  They attempted to contact Dyck O'Neal to resolve the matter "informally," but their attempts were unsuccessful, as was their attempt to obtain a loan modification.  *Id.* ¶¶ 13–15.  Julio Campos describes Dyck O'Neal as "extremely unhelpful."  *Id.* ¶ 15.  A notice of a trustee's sale was then recorded.  *Id.* ¶ 16.  A sale is currently scheduled for May 17, 2024.  *Id.* ¶ 20.

Mr. and Ms. Campos filed this action on May 7, 2024 and applied ex parte for a temporary restraining order the next day.  *See generally* Compl, ECF No. 1; Ex Parte Appl., ECF No. 4.  Their complaint asserts claims under federal law for violation of the Truth in Lending Act and Fair Debt Collections Practices Act, federal regulations, California contract law, and the California Unfair Competition Law.  *See* Compl. ¶¶ 33–68.  They also seek declaratory relief.  *Id.* ¶¶ 69–73.

After plaintiffs filed this action, their counsel contacted Dyck O'Neal by email to inform it of the case and their plan to request a temporary restraining order on an ex parte basis.  *See* Brewer Decl. ¶¶ 1–2, ECF No. 4-3.  Dyck O'Neal has not appeared and has not responded to the pending ex parte application.

## II.   LEGAL STANDARD

A court may issue a temporary restraining order "without written or oral notice to the adverse party" only if

> (A) specific facts in an affidavit or a verified complaint clearly show
> that immediate and irreparable injury, loss, or damage will result to
> the movant before the adverse party can be heard in opposition; and

1    (B) the movant's attorney certifies in writing any efforts made to give
2    notice and the reasons why it should not be required.

3  Fed. R. Civ. P. 65(b)(1).  "Every temporary restraining order issued without notice must state the

4  date and hour it was issued; describe the injury and state why it is irreparable; state why the order

5  was issued without notice; and be promptly filed in the clerk's office and entered in the record."

6  Fed. R. Civ. P. 65(b)(2).

7         The purpose of a temporary restraining order is to preserve the status quo and to prevent

8  irreparable harm "just so long as is necessary to hold a hearing, and no longer."  *Granny Goose*

9  *Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974).  In determining whether to issue a

10  temporary restraining order, a court relies on the factors that guide the evaluation of a request for

11  preliminary injunctive relief: whether the moving party "is likely to succeed on the merits, . . .

12  likely to suffer irreparable harm in the absence of preliminary relief, . . . the balance of equities

13  tips in [its] favor, and . . . an injunction is in the public interest."  *Winter v. Natural Res. Def.*

14  *Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l. Sales Co. v. John D. Brush & Co.*,

15  240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating the analysis for temporary restraining orders and

16  preliminary injunctions is "substantially identical").  Alternatively, courts within this circuit may

17  consider a request for a temporary restraining order using a "sliding scale" test in which "a

18  stronger showing of one element may offset a weaker showing of another."  *All. for the Wild*

19  *Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  For example, a stronger showing of

20  irreparable harm might offset a lesser showing of likely success on the merits.  *Id.*

21         This District's local rules also impose specific requirements on those who request a

22  temporary restraining order.  *See* E.D. Cal. L.R. 231.  Among other things, these rules require

23  "actual notice to the affected party and/or counsel" except in "the most extraordinary of

24  circumstances."  E.D. Cal. L.R. 231(a).  "Appropriate notice would inform the affected party

25  and/or counsel of the intention to seek a temporary restraining order, the date and time for hearing

26  to be requested of the Court, and the nature of the relief to be requested."  *Id.*  A party who moves

3

1    for a temporary restraining order must also confirm it has complied with local rules by filing the

2    checklist available on this court's website.[1]

3         When deciding whether to issue a temporary restraining order, the court may rely on

4    declarations, affidavits, and exhibits, among other things, and this evidence need not conform to

5    the standards that apply at summary judgment or trial.  *See Johnson v. Couturier*, 572 F.3d 1067,

6    1083 (9th Cir. 2009); *see also Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984)

7    ("The trial court may give even inadmissible evidence some weight, when to do so serves the

8    purpose of preventing irreparable harm before trial").

9    **III.   DISCUSSION**

10        At the outset, the court recognizes plaintiffs have not strictly complied with this District's

11   local rules governing applications for temporary restraining orders, given that counsel has not

12   filed a completed checklist describing plaintiffs' efforts to contact defendant or its counsel,

13   whether plaintiffs' ex parte application could have been filed sooner and the need for an

14   expedited hearing.  That said, their filings include the majority of the information required by the

15   local rules, including a complaint, a motion or application, a brief explaining "all relevant legal

16   issues," "an affidavit in support of the existence of an irreparable injury," "an affidavit detailing

17   the notice or efforts to effect notice to the affected parties or counsel or showing good cause why

18   notice should not be given," and a proposed order.  E.D. Cal. L.R. 231(c)(1)–(8).  The court

19   therefore exercises its discretion to excuse plaintiffs' noncompliance.

20        On this record, plaintiffs are entitled to a temporary restraining order under the "sliding

21   scale" test of *Alliance for the Wild Rockies*, 632 F.3d at 1131.

22        **First**, plaintiffs have established an irreparable injury is likely absent a temporary

23   restraining order: their primary residence will likely be sold.  "It is well-established that the loss

24   of an interest in real property constitutes an irreparable injury."  *Park Vill. Apartment Tenants*

25   *Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1159 (9th Cir. 2011).

---

[1] United States District Court, Eastern District of California, *Temporary Restraining Order Procedures*, https://www.caed.uscourts.gov/CAEDnew/index.cfm/cmecf-e-filing/temporary-restraining-order-tro-procedures

1    **Second**, the balance of hardships tips sharply in favor of an injunction.  Defendant would

2    be forbidden from conducting a sale for a few days or weeks.  In light of the many years the debt

3    has been outstanding—and the many years of silence described in Julio Campos's declaration—

4    an additional delay of a few days or weeks is a negligible harm.  *See, e.g.*, *Alvarez v. Wells Fargo*

5    *Bank, N.A.*, No. 15-00943, 2019 WL 4734757, at *4 (E.D. Cal. Sept. 27, 2019) ("The hardship of

6    an additional delay to allow further briefing . . . pales in comparison to the possibility that

7    Plaintiff could wrongfully lose his home.").

8        **Third**, the public interest favors a temporary restraining order.  "[A] decision in

9    [plaintiffs'] favor will serve the public interest by allowing time for this matter to be resolved on

10   the merits, either confirming a foreclosure sale is lawful or precluding a sale as unsupported by

11   the applicable law and factual record."  *Bermudez v. SN Servicing Corp.*, No. 22-01246, 2022 WL

12   3083711, at *2 (E.D. Cal. Aug. 3, 2022) (citing *Sencion v. Saxon Mortg. Servs., LLC*, No. 10-

13   3108, 2011 WL 1364007, at *3 (N.D. Cal. Apr. 11, 2011)).

14       **Fourth**, the complaint raises serious questions about defendant's liability under California

15   Business and Professions Code section 17200, also known as the Unfair Competition Law or

16   "UCL," which prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus.

17   & Prof. Code § 17200.  Each of these three prongs—unlawful, unfair and fraudulent—provides

18   for "a separate and distinct theory of liability."  *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d

19   718, 731 (9th Cir. 2007).  At this early stage, plaintiffs' complaint and affidavit raise serious

20   questions under the "unlawful" and "unfair" prongs.

21       For "unlawful" acts or practices, "the UCL borrows violations of other laws and treats

22   them as unlawful practices that the unfair competition law makes independently actionable."

23   *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 n.8 (9th Cir. 2011) (alterations and citations

24   omitted).  "Virtually any law—federal, state or local—can serve as a predicate for an action under

25   [the UCL]."  *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017)

26   (alteration in original) (quoting *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700,

27   718 (2001)).  Here there are serious questions whether defendant acted unlawfully under the UCL

1    by failing to transmit statements required by the Truth in Lending Act. *See* Mem. at 7, ECF No.

2    4-1 (citing 15 U.S.C. § 1637(b)).

3         For "unfair" acts of practices, the court must determine whether the practice "violates

4    established public policy" or "is immoral, unethical, oppressive or unscrupulous and causes injury

5    to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457,

6    1473 (2006). On this record, it is a serious question whether a lender or servicer acts "unfairly"

7    under this standard by allowing interest to accrue on a mortgage loan for many years without

8    notice, then demanding immediate repayment in full under threat of a foreclosure sale.

9         The court emphasizes the preliminary nature of the conclusions above. Plaintiffs have

10   shown only that there are sufficiently serious questions about defendant's liability under one of

11   their claims, and only with respect to their request for a temporary restraining order that delays a

12   foreclosure sale for a few days or weeks. Defendant has not been heard in response. It may very

13   well be that defendant has violated no law and has acted fairly under the UCL. But on this

14   record, plaintiffs have shown they are entitled to the limited restraining order they request.

15        Finally, Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a

16   temporary restraining order . . . only if the movant gives security in an amount that the court

17   considers proper to pay the costs and damages sustained by any party found to have been

18   wrongfully . . . restrained." District courts have "wide discretion in setting the amount of the

19   bond, and the bond amount may be zero if there is no evidence the party will suffer damages from

20   the injunction." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th

21   Cir. 2003) (citation omitted). Plaintiffs need not post a bond here. There is no evidence in the

22   record showing defendant will suffer damages as a result of a modest delay in the foreclosure

23   sale. *See Sencion*, 2011 WL 1364007, at * 3.

24   **IV.    CONCLUSION**

25        For the reasons above, the ex parte application for a temporary restraining order is

26   **granted.** The court grants the application on an ex parte basis to avoid the irreparable harm that

27   would likely come to plaintiffs if the foreclosure sale occurs before this court can consider

28   whether to issue a preliminary injunction.

1    Defendant and its agents are **enjoined** by this temporary restraining order from
2    conducting a trustee sale of plaintiffs' residence at 2495 Paseo Del Sol, Turlock, CA 95382.  The
3    temporary restraining order granted here shall expire at **5:00 p.m. on May 23, 2024**, absent
4    further order of this court.

5    A hearing on a motion for a preliminary injunction is set for **2:30 p.m. on May 23, 2024.**
6    **The hearing will proceed by videoconference**.  The courtroom deputy will contact the parties
7    with further information no later than twenty-four hours before the hearing.  Any opposition,
8    which must not exceed ten pages, excluding any attachments, must be filed no later than **4:30**
9    **p.m. on May 17, 2024.**  Plaintiffs may file a reply of no more than ten pages, excluding any
10   attachments, by **4:30 p.m. on May 21, 2024.**

11   Plaintiffs' counsel shall promptly serve a copy of this order on defendant, who has not yet
12   appeared in this action, and file a declaration on the docket of this action confirming service has
13   been completed.

14   This order resolves ECF No. 4.

15   IT IS SO ORDERED.

16   DATE AND TIME: May 10, 2024 at 2:47 p.m.

17
18
19   CHIEF UNITED STATES DISTRICT JUDGE