1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   Julio Camps and Miriam Campos,                 No. 2:24-cv-01317-KJM-DB

12                          Plaintiffs,             AMENDED ORDER

13          v.

14   Dyck O'Neal, Inc., et al.,

15                          Defendants.

16

17          Plaintiffs Julio Campos and Miriam Campos apply ex parte for a temporary restraining

18   order barring a foreclosure sale of real property in Turlock, California. *See generally* Third Ex

19   Parte App. TRO, ECF No. 36. For the reasons below, and as specified in more detail in the

20   conclusion of this order, (1) the ex parte application is **granted,** (2) the parties are **referred to a**

21   **mandatory settlement conference before the assigned Magistrate Judge**, and (3) and a

22   hearing on a motion for a preliminary injunction is set for **October 3, 2024.**

23   **I.     BACKGROUND**

24          In a previous order, the court summarized plaintiffs' claims and allegations, which are

25   incorporated here by reference, as they have largely remained unchanged. *See* First TRO, ECF

26   No. 10. In short, Mr. and Ms. Campos used two loans to purchase their Turlock home. *See* First

27   Am. Compl. ¶ 16, ECF No. 35; Campos Decl. ¶ 5, ECF No. 36-3. The first loan was for a little

28   more than $300,000 and covered about 80 percent of the total purchase price; the second loan was

                                                   1

1   for a little more than $75,000 and covered the remaining 20 percent.  *See* Campos Decl. ¶ 5.  This

2   case is about the second, smaller loan.  That loan was later discharged in bankruptcy proceedings.

3   *See id.* ¶¶ 7–8.  The Camposes believed the discharge excused them from any further obligation

4   to make payments on their loan and permitted them to continue living in their home.  *See id.*

5   ¶¶ 8, 14.  More than ten years later, however, in September 2023, they received a notice of default

6   and learned from defendant Dyck-O'Neal, Inc. (DONI) that they would have to pay nearly

7   $200,000 to avoid a foreclosure sale.  *Id.* ¶¶ 11–14.  They requested a loan modification without

8   success.  *See id.* ¶¶ 17–18.  They then filed this action, *see generally* Compl., ECF No. 1, and

9   applied ex parte for a temporary restraining order to prevent the foreclosure sale of their home,

10  *see generally* First Ex Parte App. TRO, ECF No. 4.

11         The court granted the TRO application based on its findings (1) they had raised "serious

12  questions" about their likelihood of success under California's Unfair Competition Law (UCL),

13  (2) a sale would be an irreparable harm, (3) the balance of hardships tipped sharply in favor of a

14  short delay in the sale date, and (4) the public interest favored a TRO, which would permit the

15  matter to be resolved on its merits.  *See* First TRO at 4–6.  The court noted, however, that

16  plaintiffs had not strictly complied with this district's local rules for all TROs, *see id.* at 3–4 &

17  n.1, and cautioned that "[i]t may very well be that defendant has violated no law and has acted

18  fairly under the UCL," *id.* at 6.  The court also set a hearing on a preliminary injunction.  *See id.*

19  at 7.  Soon before the court's order was docketed, however, plaintiffs withdrew their ex parte

20  application because DONI had agreed to postpone the foreclosure sale.  ECF No. 8.  The court

21  accordingly dissolved the TRO.  ECF No. 11.

22         Several weeks later, plaintiffs again sought a temporary restraining order on an emergency

23  and ex parte basis.  *See generally* Second Ex Parte App. TRO, ECF No. 14.  Defense counsel had

24  not agreed to postpone the sale any further, *see* Brewer Decl. ¶ 4, ECF No. 14-2, and DONI

25  opposed the ex parte application, ECF No. 15.  The court reviewed the record and found plaintiffs

26  had shown they were entitled to a TRO for the same reasons the court had explained in its

27  previous order.  *See* Second TRO at 2, ECF No. 18.  The court again set a hearing on a

28  preliminary injunction.  *See id.*  A few days before that hearing was scheduled to take place,

1    however, plaintiffs again withdrew their request for an injunction.  ECF No. 26.  They did not

2    explain why.  The court vacated the hearing.  ECF No. 26.

3         A little more than a week later, plaintiffs sought the court's permission to amend their

4    complaint to add allegations against two additional defendants and to modify their legal claims.

5    *See generally* Mot. Leave Am., ECF No. 29.  It was unclear whether plaintiffs' counsel had met

6    and conferred with opposing counsel, as required by this court's standing orders for all civil

7    cases.  *See* Civil Standing Order ¶ 4.A.[1]  Meeting and conferring may very well have avoided the

8    need for motion practice, as DONI did not oppose the motion for leave to amend, ECF No. 31,

9    which the court granted, ECF No. 34.

10        A few days after the amended complaint was filed, plaintiffs filed their third and currently

11   pending emergency ex parte application for a temporary restraining order.  *See generally* Third

12   TRO, ECF No. 36.  Plaintiffs' counsel did not meet and confer with counsel for any of the

13   defendants, but rather simply gave brief notice of the anticipated ex parte application.  *See* Brewer

14   Decl. ¶¶ 8–13, ECF No. 36-2.  Nor did counsel comply with the district's instructions for TRO

15   applications, which the court had cited in its previous order.  For example, the current ex parte

16   application does not attach the required TRO checklist or explain any delays in seeking

17   emergency relief.[2]  Nor did the TRO application include an adequate explanation for why

18   plaintiffs had sought emergency relief rather than pursuing their previous request for a

19   preliminary injunction.  Counsel stated only that plaintiffs had withdrawn their previous request

20   for an injunction because they intended to amend their complaint.  *See* Brewer Decl. ¶ 5.  A

21   preliminary injunction would have avoided the need for repeat emergency applications regardless

22   of a potential amendment.

23        After the court reviewed the pending ex parte application, it issued a minute order setting

24   a deadline for oppositions and ordering plaintiffs to show cause why the ex parte application

---

[1] https://www.caed.uscourts.gov/caednew/index.cfm/judges/all-judges/5020/civil-standing-order/

[2] The relevant instructions and the required forms are available on this district's website: https://www.caed.uscourts.gov/caednew/index.cfm/cmecf-e-filing/temporary-restraining-order-tro-procedures/

1    should not be denied "(1) due to Plaintiffs' withdrawal of their previous Request for a Preliminary

2    Injunction and (2) due to Plaintiff's Counsel's failure to meet and confer promptly and adequately

3    with counsel for each Defendant before filing the pending Ex Parte Application."  Min. Order,

4    ECF No. 37 (citations omitted).  In response, plaintiffs repeated their statement that they had

5    withdrawn their request for a preliminary injunction based on their anticipated motion for leave to

6    amend their complaint.  *See* Reply at 2, ECF No. 38.  They explained their decision not to meet

7    and confer by citing defense counsel's "previous unwillingness to postpone the sale of the

8    Property."  *Id.*

9          DONI opposes the pending ex parte application.  *See generally* Opp'n, ECF No. 39.[3]  The

10   court granted the ex parte application by minute order, with this explanatory order to follow.

11   **II.    DISCUSSION**

12         The court summarized the relevant legal standards in its previous orders.  *See* First TRO at

13   2–4.  The court applies those standards again in this order without repeating them.  In short,

14   plaintiffs must, at minimum, (1) raise "serious questions" about the merits of at least one of their

15   claims, (2) show they are likely to suffer irreparable harm in the absence of a temporary

16   restraining order, (3) show the balance of harms tips "sharply" in favor of a temporary restraining

17   order, and (4) show a temporary restraining order will serve the broader public interest.  *See All.*

18   *for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *see also Stuhlbarg Int'l.*

19   *Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating the analysis for

20   temporary restraining orders and preliminary injunctions is "substantially identical").

21         The court finds now, as it has in its previous orders, that plaintiffs have raised "serious

22   questions" about the merits of their claims under the "unfair" prong of the three-part definition in

23   California Business & Professions Code section 17200, within the UCL.  For allegedly "unfair"

24   acts or practices, the court must determine whether the practice "violates established public

25   policy" or "is immoral, unethical, oppressive or unscrupulous and causes injury to consumers

26   which outweighs its benefits."  *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006).

---

[3] DONI filed its opposition a few minutes after the noon deadline.  The court extends that deadline nunc pro tunc to permit the filing.

1   "On this record," as was true before, "it is a serious question whether a lender or servicer acts

2   'unfairly' . . . by allowing interest to accrue on a mortgage loan for many years without notice,

3   then demanding immediate repayment in full under threat of a foreclosure sale."  First TRO at 6.

4          The court also finds again now that a foreclosure sale would cause irreparable injury to

5   plaintiffs, i.e., a loss of their interest in real property.  *See id.* at 4 (citing *Park Vill. Apartment*

6   *Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1159 (9th Cir. 2011)).  Because a

7   temporary restraining order has only a short duration, any harm DONI and the other defendants

8   might suffer will be negligible.  *See* First TRO at 5.  For that reason, the balance of harms tips

9   sharply in favor of a temporary restraining order.  Finally, the court finds again now that a

10  temporary restraining order will serve the broader public interest by permitting the court to

11  consider the parties' arguments and the record on a more appropriate timeline without causing

12  any great delays.  *See id.*  Finally, the court imposes no bond requirement, given the likely

13  absence of any harm over the short duration of this temporary restraining order.  *See* Fed. R. Civ.

14  P. 65(c); *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir.

15  2003).

16         The court anticipates this will be the final temporary restraining order it issues in this

17  action.  The court does not anticipate granting relief to plaintiffs in the future if they have not first

18  met and conferred in good faith with *all* opposing counsel, as required by this court's standing

19  orders.  Failures to comply with this court's orders and this District's local rules in the future may

20  also result in sanctions, including monetary sanctions.

21         Finally, having reviewed the parties' briefs and the current record, the court finds a

22  mandatory settlement conference before the assigned Magistrate Judge will likely narrow the

23  parties' disputes and avoid unnecessary future motion practice.  The parties are referred to a

24  mandatory settlement conference before the assigned Magistrate Judge, with the purpose of

25  identifying a short-term agreement that will permit all parties to appear and to either (1) litigate

26  appropriately focused motions on a non-emergency, standard timeline, or (2) reach a broader

27  agreement to settle some or all of plaintiffs' claims.

**III.    CONCLUSION**

Defendants and their agents are **enjoined** by this temporary restraining order from conducting a trustee sale of plaintiffs' residence at 2495 Paseo Del Sol, Turlock, CA 95382.  The temporary restraining order granted here **shall expire in fourteen days absent further order of this court**.  *See* Fed. R. Civ. P. 65(b).

A hearing on plaintiffs' request for a preliminary injunction is set for **October 3, 2024 at 10:00 a.m.**  The hearing will be by videoconference.  The courtroom deputy will provide further information and instructions before that hearing.

Plaintiffs may file a reply of no more than ten pages, excluding any attachments, by **Friday, September 27, 2024 at 12 noon**.

A settlement conference is set for **October 2, 2024 at 10:00 a.m.** before Magistrate Judge Sean C. Riordan.  The Settlement Conference will take place by Zoom.  Each party is reminded of the requirement that it be represented at the settlement conference by a person with full settlement authority.  At least seven (7) days prior to the conference, September 25, 2024, the parties are directed to submit confidential settlement conference statements to chambers via email at scrorders@caed.uscourts.gov by 5:00 p.m. PT.  Such statements shall not be filed with the Clerk.  However, each party shall file a one-page document entitled "Notice of Submission of Confidential Settlement Conference Statement."  *See* E.D. Cal. L.R. 270(d).  The parties will receive instructions closer to the hearing date on how to appear.

Plaintiffs' counsel shall promptly serve a copy of this order on any defendants who have not yet appeared in this action and file a declaration on the docket of this action confirming service has been completed.

This order resolves ECF No. 36.

IT IS SO ORDERED.

DATE: September 20, 2024.

_____
CHIEF UNITED STATES DISTRICT JUDGE

6